IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| TRANSCARDIAC THERAPEUTICS, INC., | ) | |
| Plaintiffs, | ) | Civil Action No.: 1:13-cv-03089-AT |
| v. | ) | |
| AJIT YOGANATHAN, PH.D., JORGE H. JIMINEZ, PH.D., VINOD H. THOURANI, M.D., EMORY UNIVERSITY, GEORGIA TECH RESEARCH CORPORATION, and GEORGIA TECH FOUNDATION, INC., | ) | |
| Defendants. | ) | |

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND**

Plaintiff Transcardiac Therapeutics, Inc. ("Plaintiff" or "TCT") submits this Brief in Support of its Motion to Remand, respectfully showing the Court as follows:

## I. INTRODUCTION

Federal courts only hear specific types of cases, i.e., are courts of "limited jurisdiction." 28 USCS § 41(1). A plaintiff is "the master of his own claim." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (1994). In the eyes of the Court, the "Defendant's right to remove and plaintiff's right to choose his forum ***are not***

on equal footing" and any "uncertainties are resolved in favor of remand." *Burns*, 31 F.3d at 1095 (emphasis added.)

Indeed, "[b]ecause removal jurisdiction raises significant federalism concerns, federal courts are ***directed to construe removal statutes strictly***." *University of S. Alabama v. American Tobacco Co*., 168 F.3d 405, 411 (11th Cir. Ala. 1999) (citation omitted) (emphasis added.) "A ***presumption in favor of remand*** is necessary because if a federal court reaches the merits of a pending motion in a removed case where subject matter jurisdiction may be lacking it deprives a state court of its right under the constitution to resolve controversies in its own courts." *Id.* (Emphasis added.) "[W]hen a federal court acts outside its statutory subject-matter jurisdiction, it violates the fundamental constitutional precept of limited federal power." *Id*. at 409 (citation omitted). "[S]uch an action unconstitutionally invades the powers reserved to the states to determine controversies in their own courts" and "offends fundamental principles of separation of powers." *Id.* at 410 (citations omitted). In short, [a]s the 11th Circuit has repeatedly admonished, '***[s]tate courts***, not federal courts, ***should be the final arbiters of state law***.'" *Hopkins v. DeVeaux*, 781 F. Supp. 2d 1283, 1295 (N.D. Ga. 2011) (citation omitted) (emphasis added.)

As is set forth in detail below, the Complaint was filed in State Court and

only alleges state law claims. No federal question has been expressed and no substantial federal question is involved. Even the supposed federal question that the removing Defendants attempt to "read into" this case (where none exists) is woefully inadequate for removal under the federal standard that requires that a federal question must be important "to the federal system as a whole" in order to open the door to removal. *Gunn v. Minton*, 133 S. Ct. 1059, 1066 (2013).

In short, there is no federal claim stated. There is no federal question raised. And, the questions invented by the removing Defendants are inadequate as a matter of law even if they were present, which is not the case. Consequently, this Court lacks subject matter jurisdiction and Plaintiff respectfully requests that the case be remanded to state court where this case legally and constitutionally belongs.

## II. PLAINTIFF'S STATE LAW CLAIMS

The Complaint was filed in the State Court of Fulton County on August 9, 2013. It alleges that Omar Lattouf, M.D., Ph.D., a Professor of Surgery at Emory University's School of Medicine's Department of Surgery in Division of Cardiothoracic Surgery, entered into multiple agreements with Defendant Emory University related to several of his inventions for which patent applications had been filed. [Doc. 1.1. at ¶¶ 44, 48, 68-69, 112.] Plaintiff owns the ownership rights and interest to these inventions. [Doc. 1.1 at ¶ 179.] The Complaint also

alleges that, related to the assigned inventions, Dr. Lattouf, on behalf of Plaintiff, orally contracted with Defendants Ajit Yoganathan, Ph.D., Jorge H. Jiminez, Ph.D., Vinod Thourani, M.D., Georgia Tech Research Corporation and Georgia Tech Foundation to keep information shared with them regarding the inventions confidential in performing building, testing and research related to the inventions. [Doc. 1.1 at ¶ 184.] The Complaint explains that Defendants did not comply with terms of these contracts and publicly (and privately) represented the inventions as their own. [Doc. 1-1 at Counts I-XI.] Based on these assertions, the Complaint alleges the following claims against the Defendants: (1) breach of contract and legal duties due to contract (Count I), (2) breach of oral contract and duty (Count II), (3) breach of duty of confidential relations (Count III), (4) tortious interference with business relations (Count IV), (5) tortious interference with contract (Count V), (6) breach of legal duties and contract (Count VI), (7) fraud (Count VII), (8) conspiracy (Count VIII), (9) false advertising (Count IX), (10) expenses of litigation (Count X), and (11) punitive damages (Count XI). [Doc. 1-1 at Counts I-XI.]

Each of the 11 Counts in the Complaint is a State law claim and defined under State law. Specifically, Georgia law defines a contract (O.C.G.A. § 13-1-1), when it needs to be in writing (O.C.G.A. § 13-5-30) and the elements required for

a breach of contract claim (*see, e.g., Layer v. Clipper Petroleum, Inc.*, 319 Ga. App. 410, 413 (2012)) (quotation omitted). Georgia law also defines confidential relations (O.C.G.A. § 23-2-58) and acquisition of antagonistic rights by one in a confidential relationship (O.C.G.A. § 23-2-59). It further defines the elements of tortious interference with business relations (*see, e.g., Kirkland v. Tamplin*, 285 Ga. App. 241, 243 (2007)), tortious interference with contractual relations (*see, e.g., Kinson Cook of Ga, Inc. v. Heery/Mitchell*, 284 Ga. App. 552, 557 (2007)), false advertising (O.C.G.A. § 10-1-421), and civil conspiracy (*see, e.g., Miller v. Lomax*, 266 Ga. App. 93, 103 (2004) (citations omitted)). Legal fraud (O.C.G.A. § 23-2-52) and the tort of fraud (*see, e.g., Mecca Constr., Inc. v. Maestro Invs., LLC*, 320 Ga. App. 34, 41 (2013)) are also defined under Georgia law. Finally, Georgia law specifically directs when punitive damages (O.C.G.A. § 51-12-5.1) and expenses of litigation (O.C.G.A. § 13-6-11) are appropriate.

Even Defendant Emory University, the Defendant seeking to remove this action, agrees that "Plaintiff has not specifically alleged a claim pursuant to the federal patent laws[.]" [Doc. 1 at ¶ 7.]

## III. ARGUMENT AND CITATION OF AUTHORITY

Under every analysis, the State law claims pursued in this action fall within the purview of the Georgia courts and not this Court. As set forth below, any other

analysis would be a violation of the federal statutes pertaining to federal jurisdiction and would be unconstitutional.

## A. THE ELEVENTH AMENDMENT, GEORGIA CONSTITUTION AND GEORGIA TORT CLAIMS ACT REQUIRE REMAND.

The longstanding interpretation and application of the Eleventh Amendment to the Constitution is that: "although a case may arise under the Constitution and laws of the United States, the judicial power does not extend to it if the suit is sought to be prosecuted against a State, without her consent, by one of her own citizens." *Principality of Monaco v. Mississippi*, 292 U.S. 313, 322 (1934); *see also*, *Gouch v. Cal. Franchise Tax Bd*., 2009 U.S. Dist. LEXIS 84023 (N.D. Ga. 2009) ("[S]uits in federal court against a state or its agencies by a citizen of its own or another state are barred.") (Citations omitted.) "The State of Georgia has specifically preserved its Eleventh Amendment sovereign immunity for private tort claims brought in federal court against it and its departments, agencies, officers, or employees." *White v. City of Atlanta*, 2007 U.S. Dist. LEXIS 93073, 14-15 (N.D. Ga. Dec. 19, 2007) (citing O.C.G.A. § 50-21-23(b); Ga. Const. Art. I, § 2, P 9(f); *Gamble v. Fla. Dept. of Health and Rehabilitative Servs.*, 779 F.2d 1509, 1511-20 (11th Cir. 1986)). In fact, the Georgia Legislature included the following prohibition of federal suit regarding state tort actions in the State Tort Claims Act: "***All tort actions*** against the state under this article ***shall*** be brought in the state or

superior court of the county wherein the loss occurred; provided, however, that, in any case in which an officer or employee of the state may be included as a defendant in his individual capacity, the action may be brought in the county of residence of such officer or employee." O.C.G.A. § 50-21-28 (emphasis added.)

The Attorney General of this State has entered an appearance on behalf of two of the three individual Defendants -- Defendants Ajit Yoganathan, Ph.D. ("Yoganathan") and Jorge Jiminez, Ph.D. ("Jiminez") -- and answered on their behalf that this lawsuit belongs in State Court. In fact, in their Answer signed by the Attorney General, Defendants Yoganathan and Jiminez allege that "[t]his Court lacks subject matter jurisdiction." [Doc. 6 at 2.] Their Answer further alleges that "all actions allegedly taken by [Defendants Yoganathan and Jiminez] were taken while acting within the scope of their official duties or employment with a state government entity of the State of Georgia." [Doc. 6 at 2, 4.] Indeed, the Attorney General, on behalf of Defendants Yoganathan and Jiminez, invokes the Georgia Tort Claims Act multiple times in their Answer. [Doc. 6 at 2-4.] Given that the State considers itself a party to this action,[1] has invoked the Georgia Tort Claims Act ("GTCA") and also has alleged that the actions that are the subject of the

[1] Plaintiff disputes that the State is a proper party to this action, but that issue has not been determined by a court and, as it stands, the State's legal counsel is in the case at present asserting sovereign immunity.

Complaint were within the scope of Defendants Yoganathan and Jiminez' official duties, this case requires remand as a matter of law under the Constitution of the United States, the Constitution of this State and the GTCA.

### B. JUST BECAUSE THIS LAWSUIT DISCUSSES INVENTIONS FOR WHICH PATENTS HAVE BEEN APPLIED DOES NOT REQUIRE IT TO BE DECIDED IN FEDERAL COURT.

In general, "[a] civil action in which any party asserts a claim for relief ***arising under*** any Act of Congress relating to patents…may be removed to the district court of the United States for the district and division embracing the place where the action is pending." 28 U.S.C.S. § 1454 (a) (emphasis added.) All cases involving a patent law claim, however, ***do not*** fall within the Federal Circuit's jurisdiction. *See Granger v. Croscill Home, LLC*, 2011 U.S. Dist. LEXIS 7203, 6-7 (S.D. Ala. Jan. 7, 2011) ("The possibility of some ancillary patent-related issue does not confer jurisdiction; not all patent law questions demand federal jurisdiction-state courts can and do resolve such issues.") In fact, "[t]o hold that all questions of patent infringement are substantial questions of federal law for the purposes of federal patent jurisdiction would sweep a number of state-law claims into federal court." *MDS (Can.), Inc. v. RAD Source Techs., Inc.*, 720 F.3d 833, 843 (11th Cir. Fla. 2013) (citations omitted.) Thus, just because the subject of the contractual breaches and violations of State law is inventions for which patent

applications have been filed ***does not*** require this lawsuit to be heard in this Court.

## C. Actions Such As This One, Grounded Solely In Contract, Do Not Arise Under Federal Law.

The Supreme Court has explained that "federal-question jurisdiction… extends over '***only*** those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law,'…in that 'federal law is a necessary element of one of the well-pleaded…claims.'" *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808 (U.S. 1988) (citations omitted) (emphasis added.)[2] Defendant Emory University admits that the well-pleaded Complaint did not specifically "allege a claim pursuant to the federal patent laws[.]" [Doc. 1 at ¶ 7.] Thus, the only inquiry here is whether it plead a claim arising under the patent laws. As explained below, it did not.

As set forth above and evident from the Complaint, the 11 Counts each arise out of oral and written contracts between Plaintiff and Defendants. The United

[2] In *Christianson*, a case cited in Defendant Emory University's Notice of Removal [Doc. 1 at ¶ 7], the Supreme Court was faced with a jurisdictional issue of whether the case before it was a case "arising under" a federal patent statute. *Christianson*, 468 U.S. at 807. The Court determined that the "[p]etitioners' antitrust count [could] readily be understood to encompass ***both*** a monopolization count under § 2 of the Sherman Act and a group boycott claim under § 1" and, therefore, "[t]he patent-law issue, while arguably necessary to at least one theory under each claim, [was] not necessary to the overall success of either claim." *Id*. at 810 (emphasis added.)

States Court of Appeals for the Federal Circuit was previously faced with a very similar question: whether to remand an action sounding exclusively in contract. *See Beghin-Say International, Inc. v. Ole-Bendt Rasmussen*, 733 F.2d 1568, 1570-1571 (Fed. Cir. 1984) (hereinafter "*BSI*"). The sole question raised in the complaint before the federal court was: "whether the involved contracts should be interpreted as having conveyed title to two then non-existent U.S. patent applications." *Id*. at 1571. The Court explained that "[n]o Act of Congress relating to patents within the meaning of 28 U.S.C. § 1338 (a) spells out criteria for determining what does or does not constitute a conveyance by contract" and, therefore, determined that the "district court committed no error . . . in dismissing the complaint for lack of jurisdiction." *Id.* at 1571-1572. The *BSI* Court explained that "*Wilson v. Sandford*, 51 U.S. (10 How.) 99, 13 L. Ed. 344 (1850) and its progeny (*Ausherman v. Stump*, 643 F.2d 715, 209 U.S.P.Q. (BNA) 984 (10th Cir. 1981); *Combs v. Plough, Inc*., 681 F.2d 469, 216 U.S.P.Q. (BNA) 463 (6th Cir. 1982)), ***have consistently held for over 130 years that contract disputes involving patents do not arise 'under any Act of Congress relating to patents,'*** as required by 28 U.S.C. § 1338(a)." *Id*. at 1571.

The *BSI* Court is not alone in finding that a case grounded in contract does not belong in federal court. The 11th Circuit Court of Appeals has explained that

"where a patentee complainant makes his suit one for recovery of royalties under a contract of license or assignment, or for damages for a breach of its covenants, or for a specific performance thereof, or asks the aid of the court in declaring a forfeiture of the license, or in restoring an unclouded title to the patent, he does not give the federal District Court jurisdiction of the cause as one arising under the patent laws." *Granger, LLC*, 2011 U.S. Dist. LEXIS at 7-8 (citing *Luckett v. Delpark, Inc.*, 270 U.S. 496, 510, 46 S. Ct. 397, 70 L. Ed. 703, 1926 Dec. Comm'r Pat. 307 (1926); *see also BSI*, 733 F.2d at 1571 (pointing out that courts "have consistently held for over 130 years that contract disputes involving patents do not 'arise under any act of Congress relating to patents,'" as required by § 1338(a)); *Arvin Indus., Inc. v. Berns Air King Corp.*, 510 F.2d 1070, 1072-1074 (7th Cir. 1975) (suit for breach of patent license agreement); *Kysor Indus. Corp. v. Pet, Inc.*, 459 F.2d 1010, 1012 (6th Cir. 1972), *cert. denied*, 409 U.S. 980, 93 S. Ct. 314, 34 L. Ed. 2d 243 (1972) (suit for breach of patent license agreement)). The *Granger* Court found that the plaintiff's claims before it for breach of contract and negligence did not create an action under § 1338 and therefore that the case before it did not present an instance of federal question jurisdiction." *Id.* at 8.

The *BSI* Court explained that, "[a]bsent those contracts, BSI would have no claim whatever to ownership in the patent applications in dispute or otherwise" and

that "[a]bsent those contracts, BSI would lack standing to sue in any court in relation to those applications." *BSI*, 733 F.2d at 1570. Like the claims before the *BSI* Court, Plaintiff's claims sound in contract, no question under patent law is present in or arises out of the allegations in the Complaint. *See id*. at 1570-1571.

### D. THE CLAIMS IN THIS LAWSUIT FAIL THE FOUR-PART TEST REQUIRED FOR THEM TO REMAIN IN FEDERAL COURT.

#### 1. THESE CLAIMS MUST PASS THE FOUR-PART *GRABLE* TEST TO REMAIN IN THIS COURT.

According to the Supreme Court, "[l]inguistic consistency, to which [the Supreme Court has] historically adhered, demands that § 1338(a) jurisdiction likewise extend ***only*** to those cases in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." *Id*. at 808-809 (citation omitted) (emphasis added.)

In July of this year, the Supreme Court re-confirmed its four-part test to determine whether a "state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Gunn*, 133 S. Ct. at 1065 (citation omitted). Specifically, it

explained that "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, ***and*** (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id*. (Emphasis added.) Only "[w]here all four of these requirements are met,…jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Id.* (Citation omitted.) This test was originally set forth by the Supreme Court in *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313-314 (2005).

### 2. THE FOUR-PART *GRABLE* TEST HAS REQUIRED REMAND UNDER SIMILAR FACTS.

In *Gunn*, the Supreme Court was tasked with determining "whether a state law claim alleging legal malpractice in the handling of a patent case must be brought in federal court." 133 S. Ct. at 1062. On appeal, Minton argued that a Texas trial court's order should be vacated and the case dismissed because the trial court lacked subject matter jurisdiction "[b]ecause his legal malpractice claim was based on an alleged error in a patent case, it 'aris[es] under' federal patent law for purposes of 28 U.S.C. § 1338 (a)." *Id*. at 1063. Minton's argument – that there was important federal question lurking – was rejected by a divided panel of the

Texas Court of Appeals. *Id.* The Supreme Court granted cert. *Id*. at 1064.

Applying the four-part inquiry, the Supreme Court decided that Vernon Minton's legal malpractice claim did not arise under federal patent law. *Gunn*, 133 S. Ct. at 1062, 1064. "Resolution of a federal patent question [was] necessary to Minton's case" and that federal issue was actually disputed. *Id.* at 1065-1066. But, the third and fourth requirements of the test were not met. *Id*. at 1066-1068. The fourth requirement was not met because the federal issue was not substantial in the relevant sense. *Id*. at 1066. "[I]t is not enough that the federal issue be significant to the particular parties in the immediate suit; that will *always* be true when the state claim "necessarily raise[s]" a disputed federal issue[.]" *Id.* The substantial inquiry "looks instead to the importance of the issue to the federal system as a whole." *Id.* Also, because of the absence of a substantial federal issue, the fifth requirement, which "is concerned with the appropriate 'balance of federal and state judicial responsibilities,'" was not met. *Id*. at 1068. The Supreme Court summarized the reasons for rejecting federal jurisdiction:

> There is no doubt that resolution of a patent issue in the context of a state legal malpractice action can be vitally important to the particular parties in that case. But something more, demonstrating that the question is significant to the federal system as a whole, is needed. That is missing here.

*Id*. at 1068. (Emphasis added.)

The *Gunn* Court explained that "state legal malpractice claims based on underlying patent matters will rarely, if ever, arise under federal patent law for purposes of § 1338(a)." *Gunn*, 133 S. Ct. at 1065. According to the Supreme Court, "[a]lthough such cases may necessarily raise disputed questions of patent law, those cases are by their nature unlikely to have the sort of significance for the federal system necessary to establish jurisdiction." *Id.*

The same is true in the case at bar. In fact, the 11th Circuit Court of Appeals remanded a case that -- like this one -- involved breach of agreement and confidential relations claims. *See Mannsfeld v. Phenolchemie, Inc.*, 466 F. Supp. 2d 1266 (S.D. Ala. 2006). The action was filed in the Circuit Court of Mobile County, Alabama, but the defendants removed it to federal court, alleging that federal jurisdiction existed because the case involved claims that necessitated resolution of a substantial question of federal patent law. *Id.* at 1268. The complaint alleged that the "plaintiff developed a business relationship with representatives of the defendants, during which plaintiff, in confidence, communicated to defendants the nature of plaintiff's novel idea, trade secret and/or other confidential information." *Id.* Specifically, the complaint, very similar to the action at bar, alleged the following eight causes of action: (1) conversion, (2) fraudulent concealment, (3) unjust enrichment, (4) misappropriation of trade

secrets, (5) breach of fiduciary duty, (6) tortious interference with contractual or business relations, (7) breach of implied contract, and (8) injunctive relief. *Id.* Degussa AG had undertaken lab tests and pilot runs that allegedly verified the plaintiff's novel idea. *Id.* The plaintiff asserted that he was assignee of any and all rights of Deguassa AG as well as to the novel idea. *Id.*

The plaintiff in *Mannsfeld* cited "numerous cases which have concluded that federal question jurisdiction does not exist for claims brought by a putative inventor against one who, in breach of an agreement or other confidential relationship, wrongfully disclosed and misappropriated the plaintiff's invention by obtaining a patent on it. *Mannsfeld*, 466 F. Supp. at 1270 (citing Doc. 29, pp. 5-6 citing *Becher v. Contoure Laboratories, Inc.*, 279 U.S. 388, 49 S.Ct. 356, 73 L. Ed. 752, 1929 Dec. Comm'r Pat. 288 (1929); *Uroplasty, Inc. v. Advanced Uroscience, Inc.*, 239 F.3d 1277 (Fed. Cir.2001) *Inc. v. Advanced Uroscience, Inc.*, 239 F.3d 1277 (Fed. Cir.2001); *AT&T v. Integrated Network Corp.*, 972 F.2d 1321 (Fed. Cir. 1992); *Montecatini Edison S.P.A. v. Ziegler*, 486 F.2d 1279 (D.C. Cir. 1973); *Eckert v. Braun*, 155 F.2d 517 (7th Cir. 1946); *Kleinerman v. Snitzer*, 754 F.Supp. 1 (D. Mass. 1990); *Miller v. Rudolph Wurlitzer Co.*, 48 F.Supp. 772 (D. N.Y. 1942); *Plastic & Metal Fabricators, Inc. v. Roy*, 163 Conn. 257, 303 A.2d 725 (Conn. 1972); *Edwards v. Gramling Engineering Corporation*, 322 Md. 535, 588

A.2d 793 (Md. 1991); *Stark v. Advanced Magnetics, Inc*., 50 Mass. App. Ct. 226, 736 N.E. 2d 434 (Mass. App. Ct. 2000); *Ogontz Controls Co. v. Pirkle*, 346 Pa. Super. 253, 499 A.2d 593 (Pa. Super. 1985)). In remanding the case, the 11th Circuit explained that "[a]lthough obtaining a patent which allegedly includes plaintiff's trade secret or idea is the method by which defendants allegedly violated plaintiff's rights, plaintiff ***asserts no rights pursuant to the patent or under patent law***" and "…***only asserts rights with regard to the trade secret or idea itself***." *Id.* (Emphasis added.) According to the Court, "[t]he patent may be evidence in support of plaintiff's allegations, '***but the mere presence of the patent does not create a substantial issue of patent law***.'" *Id*. (citation omitted) (emphasis added.) The Court continued, explaining that "[c]onsideration of whether the idea at issue was novel or confidential does not require the resolution of a substantial issue of patent law" and that the "[p]laintiff's claims require that he show that defendants disclosed or used trade secrets of confidential information or ideas, a burden that can be met without requiring the resolution of a substantial issue of patent law." *Id.* (citation omitted.) So too here. In this case, even if TCT held no patent rights, Plaintiff could allege <u>and prove</u> violations of duties and agreements to keep disclosed information confidential and to work in the best interests of Dr. Lattouf and TCT, rather than against them.

### 3. THESE CLAIMS FAIL THE *GRABLE* TEST AND REQUIRE REMAND.

As in *Mannsfeld*, though the patents referenced in the Complaint may be evidence in support of Plaintiff's allegations, their mere presence does not create a substantial issue of patent law. *See Mannsfeld*, 466 F. Supp. at 1270. These claims, too, fail on the third and fourth issues set forth by the recent *Gunn* decision: they are not substantial and they are not capable of resolution in this Court without disrupting the federal-state balance approved by Congress. *See Gunn*, 133 S. Ct. at 1066-1068. Here -- just like in *Mannsfeld* -- consideration of whether the ideas at issue were novel or confidential does not require the resolution of a substantial issue of patent law. *See Mannsfeld*, 466 F. Supp. at 1270 (citation omitted.) (*See also Id*.: the "burden that can be met without requiring the resolution of a substantial issue of patent law. (Citation omitted.)) As in *Mannsfeld*, no rights in this lawsuit are pursued related to the patent or under patent law. *Id*. As the Supreme Court explained in *Gunn*, while this lawsuit may necessarily raise disputed questions of patent law, this case is by its nature unlikely to have the sort of significance for the federal system necessary to establish jurisdiction. *See Gunn*, 133 S. Ct. at 1065. Instead, this lawsuit is a dispute among parties related to State law and which should be decided by a State Court applying State law.

## E. THE FEDERAL STATUTE REGARDING FEDERAL DECISION OF CERTAIN PATENT CLAIMS, DIRECTS AND ALSO PERMITS REMAND IN THIS CASE.

### 1. 28 U.S.C.S. § 1454 DIRECTS REMAND OF THIS LAWSUIT.

Even 28 U.S.C.S. § 1454 explicitly states that removal is not always the case when a patent is involved. According to § 1454, if a civil action is removed solely on the basis that a party has asserted a claim for relief arising under any Act of Congress relating to patents, the district court "***shall remand***" all claims that are neither a basis for removal secondary to arising under an Act of Congress relating to patents "nor within the original or supplemental jurisdiction of the district court under any Act of Congress." 28 U.S.C.S. § 1454 (a), (d) (1) (emphasis added.)

As stated above, even Defendant Emory University, the Defendant seeking to remove this action, agrees that "Plaintiff has not specifically alleged a claim pursuant to the federal patent laws[.]" [Doc. 1 at ¶ 7.] Also, as set forth in the foregoing section, these claims fail the *Grable* four-part test. Thus, no claim in this lawsuit was asserted under or arises under an Act of Congress relating to patents and, therefore, the entire case requires remand under 28 U.S.C.S. § 1454 (d) (1).

### 2. 28 U.S.C.S. § 1454 ALSO PERMITS REMAND OF THIS ACTION, EVEN IF IT AROSE UNDER FEDERAL PATENT LAW (WHICH IT DID NOT).

A district court also "***may***, under the circumstances specified in section 1367 (c) [28 USCS § 1367 (c)], ***remand*** any claims within the supplemental jurisdiction

of the district court under section 1367 [28 USCS § 1367][3].” 28 U.S.C.S. § 1454 (a), (d) (2) (emphasis added.) Specifically, district courts may decline to exercise supplemental jurisdiction and remand a claim if: (1) it “raises a novel or complex issue of State law,” (2) it “substantially predominates over the claim or claims over which the district court has original jurisdiction,” (3) “the district court has dismissed all claims over which it has original jurisdiction,” or (4) “in exceptional circumstances, there are other compelling reasons for declining jurisdiction.” 28 U.S.C.S. § 1367 (c); 28 U.S.C.S. § 1454 (a), (d) (2). ***Any one*** of these factors “is sufficient to give the district court discretion to dismiss a case’s supplemental state law claims.” *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 743 (11th Cir. Ga. 2006) (citation omitted.)

At least three of these factors apply to permit remand of this lawsuit. It raises 11 issues of State law, many of which are complex. These State law claims substantially predominate over any issue, including patent law even if there were a patent law issue, which is not the case here.

Moreover, “[a] federal court will find substantial predominance when it

---

[3] Under 28 U.S.C.S. § 1367 (a), “. . . in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.”

appears that a state claim constitutes the real body of a case, to which the federal claim is only an appendage" (*Parker*, 468 F.3d at 744 (citation omitted)), which is exactly the case at bar. All 11 Counts are State law Counts to be decided under State law and, as such, should be decided in State Court. It is merely ancillary that the contracts relate to actual or anticipated inventions for which patent applications have been filed. As expressed above, this case would not exist but for the contracts in which all of its claims sound. *See BSI*, 733 F.2d 1570-1572.

Exceptional circumstances also exist here. ***First***, the alleged facts of this case, taken as true at this state, involve dishonesty and breaches of integrity by some of Georgia's finest academic institutions and their administrations and faculty. Such facts are extraordinary. No one has a greater interest in the integrity of its institutions than the State of Georgia and its citizens. This case is of the utmost importance to Georgians, and these claims of dishonesty and cheating are anchored in basic state law, upon which federal court has expressed consistent deference to state courts. ***Second***, the contentions by the removing Defendants that this case is really a hidden patent dispute are particularly curious given that they have not alleged to hold any relevant or supposedly competing patents, despite numerous opportunities and duties to present such competing claims if they had any.

Under the facts and circumstances and allegations (taken as true at this stage), "judicial economy, convenience, and fairness to the parties" all support the existence of exceptional circumstances here which are best addressed in State Court. *Parker*, 468 F.3d at 745. In short, aside from all of the reasons mandating remand, this Court should also remand this case pursuant to the "permissive" authority found in 28 U.S.C.S. § 1367 (c), because it will be more sensible, more simple, more convenient, and more judicially economic to evaluate 11 State law claims that are defined under State law in State Court.

## IV. CONCLUSION

For the reasons set forth in detail above, including the combination of no substantial federal question and the predominant state interest, Plaintiff respectfully requests that the Court consider and GRANT their Motion to Remand, thus remanding this case back to the State Court of Fulton County, Georgia, and granting such other and further relief as deemed just and appropriate.

Respectfully submitted, this 14th day of October, 2013.

*/s/ John W. Crongeyer*
John W. Crongeyer
Georgia State Bar No. 197267

**CRONGEYER LAW FIRM, P.C.**
2170 Defoor Hills Road
Atlanta, GA 30318
Telephone: (404) 542-6205
Facsimile: (404) 872-3745
jwc@birdlawgroup.com

*/s/ Kristen L. Beightol*
William Q. Bird
Georgia State Bar No. 057900
Kristen L. Beightol
Georgia State Bar No. 425814

**BIRD LAW GROUP, P.C.**
2170 Defoor Hills Road
Atlanta, GA 30318
Telephone: (404) 873-4696
Facsimile: (404) 872-3745
wqb@birdlawgroup.com
klb@birdlawgroup.com

*/s/ J. Robert Howard*
J. Robert Howard
Georgia State Bar No. 370900

2393 Montview Drive, N.W.
Atlanta, GA 30305
Telephone: (404) 367-9924
Facsimile: (404) 351-8997
Jrh2393@comcast.net

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed a copy of the foregoing *Brief in Support of Plaintiff's Motion to Remand* with the Clerk of Court using the CM/ECF system and served a copy upon counsel for Defendants by electronic filing as follows:

Joel D. Bush II
C. Allen Garrett, Jr.
Robert E. Buckley
Kilpatrick Townsend & Stockton LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4528

Jill Warner
Michael E. Brooks
McRae Brooks Warner LLC
1175 Peachtree Street, NE
100 Colony Square, Suite 2100
Atlanta, Georgia 30361

Holmes J. Hawkins, III
James J. Mayberry
Amy Yervanian Jones
Andrew Mutter
King & Spalding
1180 Peachtree Street, NE
Atlanta, Georgia 30309

Julie Adam Jacobs
Senior Assistant Attorney General
W. Wright Banks, Jr.
Deputy Attorney General
Department of Law, State of Georgia
40 Capitol Street, S.W.
Atlanta, Georgia 30334-1300

Respectfully submitted this 14th day of October, 2013,

*/s/ John W. Crongeyer*
John W. Crongeyer
Georgia State Bar No. 197267

Crongeyer Law Firm, P.C.
2170 Defoor Hills Road
Atlanta, GA 30318
Telephone: (404) 542-6205
Facsimile: (404) 872-3745
jwc@birdlawgroup.com

**Font Certification**

Pursuant to Local Rule 7.1D, I hereby certify that the foregoing document was prepared using Times New Roman 14 point type as provided in Local Rule 5.1C.

*/s/ John W. Crongeyer*
John W. Crongeyer
Georgia State Bar No. 197267

Crongeyer Law Firm, P.C.
2170 Defoor Hills Road
Atlanta, GA 30318
Telephone: (404) 542-6205
Facsimile: (404) 872-3745
jwc@birdlawgroup.com