**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| TRANSCARDIAC THERAPEUTICS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>AJIT YOGANATHAN, PH.D., JORGE H. JIMINEZ, PH.D., VINOD H. THOURANI, M.D., EMORY UNIVERSITY, GEORGIA TECH RESEARCH CORPORATION, and GEORGIA TECH FOUNDATION, INC.,<br><br>Defendants. | Civil Action No. 1:13-cv-03089-AT |

**DEFENDANT EMORY UNIVERSITY'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

KILPATRICK TOWNSEND
& STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4528
Telephone: (404) 815-6500
Facsimile: (404) 815-6555

Joel D. Bush II (Ga. Bar No. 098775)
C. Allen Garrett Jr. (Ga. Bar No. 286335)
Robert E. Buckley (Ga. Bar No. 140280)
jbush@kilpatricktownsend.com
agarrett@kilpatricktownsend.com
robuckley@kilpatricktownsend.com

*Counsel for Defendant Emory University*

## I. INTRODUCTION

Defendant Emory University ("Emory") removed this action because Plaintiff TransCardiac Therapeutics, Inc.'s ("TCT's") "right to relief necessarily depends on resolution of a substantial question of federal patent law." *Christianson v. Colt Indus. Op. Corp.*, 486 U.S. 800, 809 (1988). TCT's Complaint is replete with references to alleged federal patent inventorship rights of Omar Lattouf, M.D., Ph.D., and TCT's claims raise substantial questions of federal patent inventorship governed by 35 U.S.C. § 116 (patent applications) and § 256 (issued patents). This federal patent law "'preempts any state law that purports to define rights based on inventorship.'" *HIF Bio, Inc. v. Yung Shin Pharm. Indus. Co.*, 600 F.3d 1347, 1353 (Fed. Cir. 2010). Because inventorship is an essential element of TCT's claims, TCT's Motion to Remand should be denied.

TCT's Complaint explicitly rests on allegations that Defendants falsely claimed invention of "IP" actually invented by Dr. Lattouf, all as allegedly reflected in Dr. Lattouf's patent applications and issued patents.[1] Yet, TCT's Brief does not address Emory's "inventorship" basis for removal. Instead, TCT relies on:

---

[1] *See, e.g.*, Compl. ¶¶ 179, 195, 198, 205, 209(2) & (7), 210, 214, 222, 229-30, 237, and 241-42. TCT itself describes its claims as arising from agreements with Emory "related to several of [Dr. Lattouf's] ***inventions for which patent applications had been filed***." Br. in Supp. of Mot. to Remand ("TCT's Brief" or "TCT's Br."), at 3 (emphasis added).

(1) cases in which the contract at issue involved a patent, but no patent law issue was essential to the claims; and (2) cases in which a putative inventor claimed another party stole a secret idea and patented it. These cases do not apply here because: (1) TCT's claims do not rely on mere alleged breaches of contract, but instead depend on allegations of false claims of patent inventorship; and (2) TCT does not claim Defendants stole and patented Dr. Lattouf's trade secrets – nor could it, since (as far as can be ascertained) TCT's alleged "IP" was disclosed in patent applications filed by Dr. Lattouf over a decade ago. *See infra* n.12. As TCT's own allegations repeatedly confirm, this is not a case about a failure to pay royalties or theft of trade secrets. This is a case about U.S. Patents and Patent Applications; their inventors; and representations about federal patent inventorship.

As long as at least one of TCT's claims arises under federal patent law, the other claims are subject to supplemental jurisdiction. *See* 28 U.S.C. § 1454(d)(1). TCT's claims are permeated by federal patent inventorship issues, and TCT's conclusory arguments for discretionary remand of any non-patent claims under 28 U.S.C. § 1367(c) do not withstand scrutiny.

Accordingly, TCT's Motion to Remand should be denied. Moreover, even assuming none of TCT's claims arose under federal patent law (which they do), when Emory is required to answer it may be required to file a declaratory judgment

counterclaim regarding certain patents it co-owns with Defendant Georgia Tech Research Corporation ("GTRC"). Under the 2011 amendments to § 1338(a), this counterclaim would fall within this Court's exclusive patent law jurisdiction and would independently trigger supplemental jurisdiction over TCT's claims.

## II. TCT'S PATENT INVENTORSHIP-BASED COMPLAINT

### A. TCT's Factual Allegations Regarding Dr. Lattouf's Alleged Inventorship of U.S. Patent Applications and Issued Patents

TCT's Complaint cites various patent applications and issued patents relating to alleged inventions of Dr. Lattouf in the field of transapical access heart surgery. The Complaint first describes U.S. Patent Application No. 60/340,062, which TCT alleges was the subject of a "Release Letter" between Emory and Dr. Lattouf in September 2002. Compl. ¶¶ 42-47 & Ex. A. The Complaint then recites a "First Amendment" in February 2005 regarding four additional U.S. Patent Applications, *id.* ¶¶ 68-71 & Ex. C, and a "Second Amendment" dated May 2009, listing an additional 26 U.S. Patent Applications. *Id.* ¶ 112 & Ex. E.

TCT's Complaint also cites a March 2013 U.S. Patent Application by Dr. Lattouf entitled "Methods and Devices for Minimally Invasive Transapical Access to the Heart." Compl. ¶ 115 & Ex. G-6, at 3, 47-53. According to TCT, this U.S. Patent Application asserts a broad claim to the "entire subject matter of minimally invasive transapical heart surgery." *See id.* Ex. G-6, at 3. Other allegations of the

Complaint likewise reference a broad claim to invention of the entire field of "transapical minimally invasive intra heart repair." *Id.* ¶¶ 123-24, 135.[2]

Based on these U.S. Patents and Patent Applications, TCT makes numerous allegations that the Defendants have falsely claimed inventorship of Dr. Lattouf's inventions. *See, e.g.*, Compl. ¶ 128 (alleging that Defendants made "false public statements touting the individual Defendants as inventors" of Dr. Lattouf's alleged inventions); ¶ 168 (alleging false characterization of "Defendants Thourani, Yoganathan, and Jimenez as inventors of the technology"). These and similar allegations of the Complaint: (a) are inconsistent with a declaration of inventorship to the U.S. Patent and Trademark Office ("PTO") by Defendants Yoganathan and Jimenez;[3] and (b) depend on proof that, in fact, Dr. Lattouf invented technology that other patent applicants represented to the PTO that they invented.

---

[2] The Complaint does not specify whether TCT's inventorship claims are limited to the specific inventions identified in the Release Letter and its Amendments or instead rely upon the broader claim to the entire field of transapical access heart surgery allegedly made in the March 2013 U.S. Patent Application. Because of this ambiguity and other defects in TCT's Complaint, Emory and other Defendants filed motions for a more definite statement by TCT. Dkt. 7, 10, and 12. Briefing on these motions has been stayed. Dkt. 17.

[3] *See* "Declaration and Power of Attorney for Patent Application" in support of U.S. Patent Application No. 11/739,151 (copy attached as **Exhibit A**). This declaration is required under, *inter alia*, 35 U.S.C. § 115 and 37 C.F.R. 1.63, and supported two U.S. Patents ultimately issued to Drs. Yoganathan and Jimenez (and co-owned by Emory and GTRC). *See* U.S. Patent No. 7,846,123 (copy attached as

### B. TCT's Claims Rely on Defendants' Allegedly False Statements Regarding Dr. Lattouf's Alleged Patent Inventorship Rights

Consistent with TCT's numerous patent inventorship fact allegations, TCT's nine substantive claims focus on Dr. Lattouf's alleged patent inventorship rights:

**1. Breach of Contract** – Defendants Emory, Dr. Yoganathan, and Dr. Thourani allegedly breached the Release Letter and Amendments "by publicly representing that certain of the Release Letter IP and First and Second Amendment improvements were their inventions." Compl. ¶ 179; *see also id.* ¶ 180 (claiming these Defendants breached by making a "claim of invention").

**2. Breach of Oral Contract** – All Defendants other than Emory allegedly breached oral contracts with Dr. Lattouf "by sharing and using to their own benefit the Plaintiff's property including Plaintiff's IP." *Id.* ¶ 187.

**3. Breach of Duty of Confidential Relations –** TCT allegedly had a "confidential relationship" with each Defendant "regarding the Release Letter IP and the First and Second Amendment Improvements," which Defendants allegedly breached by "surreptitiously planning for and announcing false claims of invention

---

**Exhibit B**) and U.S. Patent No. 8,430,836 (issued April 30, 2013) (copy attached as **Exhibit C**). U.S. Patents and PTO filings are appropriate subjects of judicial notice. *See, e.g., In re Androgel Antitrust Litig. (No. II)*, 687 F. Supp. 2d 1371, 1373, n.1 (N.D. Ga. 2010) (U.S. Patent) (subsequent proceedings omitted); *Vitek Sys., Inc. v. Abbott Labs.*, 675 F.2d 190, 192, n.4 (8th Cir. 1982) (PTO materials).

and assignment and antagonistic rights in the Release Letter IP and First and Second Amendment Improvements." *Id.* ¶¶ 190 & 195.

**4. Tortious Interference with Business Relations** – Defendants allegedly interfered with TCT's business relations by "wrongfully publicly represent[ing] that they invented certain of the Release Letter IP, First Amendment Improvements and/or Second Amendment Improvements." *Id.* ¶ 198.

**5. Tortious Interference with Contract** – All Defendants other than Emory allegedly interfered with the Release Letter and Amendments by, *inter alia*, "knowingly persuading Defendant Emory that they or some of them invented the IP," thus damaging "the IP which is the subject of Plaintiff's contracts." *Id.* ¶ 205.

**6. Breach of Legal Duties and Contract** – Defendants allegedly breached various purported legal duties by, *inter alia*, "falsely claiming invention and ownership of the IP of Plaintiff." *Id.* ¶ 210.

**7. Fraud** – Defendants allegedly committed fraud by "suppressing" their alleged intent to "compete and profit from false claims of invention of transapical minimally invasive surgery by certain of the defendants (Defendants Yoganathan, Thourani, and Jimenez), and to claim title to that invention …." *Id.* ¶ 222; *see also id.* ¶ 229 (same); ¶ 230 (alleging fraud relative to Release Letter and Amendments "by representing such information as their own inventions and property").

**8.** **Conspiracy** – Defendants allegedly conspired to "represent[] certain of the Release Letter IP, First Amendment Improvements and Second Amendment Improvements as their own." *Id.* ¶ 237.

**9.** **False Advertising** – Defendants allegedly falsely advertised that they "own and/or invented the Release Letter IP, the First Amendment Improvements and/or the Second Amendment Improvements." *Id.* ¶ 242; *see also* ¶ 241.

## III. FEDERAL PATENT LAW IS ESSENTIAL TO TCT'S CLAIMS

A case "arises under" 28 U.S.C. § 1338(a) when "federal patent law creates the cause of action" or when "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." *Christianson*, 486 U.S. at 808-09. As recently stated by the Supreme Court, "federal jurisdiction over a state law claim will lie if a federal issue is (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disturbing the federal-state balance approved by Congress." *Gunn v. Minton*, 133 S. Ct. 1059, 1065 (2013). Each of these elements is satisfied here.

### A. TCT's Claims Necessarily Raise Patent Inventorship Issues

In *Gunn*, the Supreme Court analyzed whether a claim of legal malpractice predicated on a prior patent infringement action triggered federal jurisdiction. The

Court easily found the federal issue "necessary" to the legal malpractice claim, because proving the essential element of "causation" would require proof that the plaintiff "would have prevailed in his federal patent infringement case" but for defendants' malpractice. *Gunn*, 133 S. Ct. at 1065.

Here, TCT's claims require resolution of federal patent inventorship issues. It is well-settled that patent inventorship issues give rise to federal jurisdiction. *See MCV, Inc. v. King-Seeley Thermos Co.*, 870 F.2d 1568, 1570-71 (Fed. Cir. 1989). Accordingly, when a party asserts a state law claim that requires a determination of inventorship of a federal patent, the case "arises under" federal patent jurisdiction. *See, e.g., RustEvader Corp. v. Cowatch*, 842 F. Supp. 171, 173 (W.D. Pa. 1993) (denying remand where state law claims "necessarily depended upon the resolution of a substantial federal question, *i.e.*, inventorship").

### 1. *HIF Bio*'s Analysis of Similar Inventorship Issues

In *HIF Bio, Inc. v. Yung Shin Pharm. Indus. Co.*, 600 F.3d 1347 (Fed. Cir. 2010), the plaintiff asserted various state law claims, including a state law claim for a declaration of inventorship relative to pending U.S. patent applications. The *HIF* court reversed the district court's ruling that the declaratory claim could proceed under state law, on the grounds that "'federal patent law preempts any state law that purports to define rights based on inventorship.'" *Id.* at 1352-53 (quoting

*University of Colo. Found., Inc. v. Am. Cyanamid Co.*, 196 F.3d 1366, 1372 (Fed. Cir. 1999)). Because federal law exclusively determines patent inventorship rights, the inventorship claim necessarily arose under 28 U.S.C. § 1338(a). *Id.* at 1353.[4]

The *HIF* court also held federal inventorship law was an essential element of a state law claim for "slander of title." Similar to TCT's claims here, the slander of title claim in *HIF* rested on allegations that plaintiffs "invented the INVENTION first and that defendants' public statements of inventorship are false and caused the plaintiffs' damages." *Id.*at 1355. Because "inventorship is indisputably a question of federal patent law," this state law claim also arose under federal patent law. *Id.*[5]

Here, as with the declaratory judgment and slander of title claims in *HIF*, federal patent inventorship issues are essential to TCT's state law claims. TCT's breach of express contract claim rests entirely on alleged misrepresentations of inventorship of Dr. Lattouf's alleged "inventions" that are purportedly the subject of "issued patents" or patent applications. Compl. ¶ 179. Similarly, TCT's tortious

[4] The *HIF* court then held that there is not a "private right of action to challenge inventorship of a pending patent application." *Id.* at 1354. "Accordingly, while the district court has jurisdiction over the cause of action, it should have dismissed the claim under Rule 12(b)(6) because no private right of action exists." *Id*.

[5] Citing, *inter alia, Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1325 (Fed. Cir. 1998), *overruled in part on other grounds by Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356 (Fed. Cir. 1999). As with the declaratory judgment claim, the *HIF* court ruled the district court should have dismissed the slander of title claim for failure to state a claim. *Id.* at 1355.

interference with business relations claim depends entirely on allegedly false statements that Defendants "invented" Dr. Lattouf's inventions. *Id.* ¶ 198. TCT's conspiracy claim specifies only that Defendants schemed to represent Dr. Lattouf's inventions "as their own." *Id.* ¶ 237. And TCT's false advertising claim rests entirely on Defendants' alleged dissemination of false statements of invention. *Id.* ¶¶ 241-42. As in *HIF*, TCT can succeed on these claims only by proving that Dr. Lattouf invented the inventions and that "defendants' public statements of inventorship are false and caused the plaintiffs' damage." 600 F.3d at 1355.[6]

Although TCT's other claims are vague, they too explicitly rely on allegedly false statements of inventorship. TCT claims Defendants breached a "confidential relationship" with TCT by "surreptitiously planning for and announcing false claims of invention and assignment and antagonistic rights." Compl. ¶ 195. TCT's claim for tortious interference with the Release Letter (Count V) relies heavily on the non-Emory Defendants' alleged efforts to persuade Emory that they invented Dr. Lattouf's inventions. *See id.* ¶¶ 203, 205. TCT's nebulous "legal duties" claim

[6] The *HIF* court ruled federal inventorship law was not essential to several other state law claims, emphasizing allegations that defendants also misappropriated "experiments, pre-publication experimental data, and non-public, pre-publication drafts of papers." *Id.* at 1355, 1356, 1357; *see also id.* at 1356 (referencing alleged theft of "non-public and valuable research data"). TCT's claims, however, do ***not*** appear to make similar allegations.

includes multiple references to false claims of "invention." *See id.* ¶¶ 209(2) & (7), 210. And TCT's confusing fraud claim alleges Defendants' purported suppression of their intent "to compete and profit from false claims of invention of transapical minimally invasive surgery." *Id.* ¶ 222; *see also* ¶¶ 229 & 230. Establishing these allegations depends on TCT proving false statements of patent inventorship.

Thus, four of TCT's claims depend entirely on proving false statements of patent inventorship as an essential element of the claim, and four others rely explicitly on allegedly false inventorship claims.[7] "Because inventorship is a unique question of patent law, the cause of action arises under § 1338(a)" and the Court has "no discretion" to remand such claims. *HIF*, 600 F.3d at 1352, 1353.

**2. TCT Relies on Two Inapposite Lines of Cases**

Emory's Notice of Removal detailed the federal patent inventorship grounds supporting its removal. Not. of Removal ¶¶ 5-8. TCT's Brief, however, ignores the inventorship issue entirely, instead citing two inapplicable lines of cases:

---

[7] TCT's oral contract claim does not explicitly allege false claims of inventorship, but instead appears to raise patent infringement issues. *See* Compl. ¶ 187 (alleging non-Emory Defendants breached oral contracts "by sharing and using to their own benefit the Plaintiff's property including Plaintiff's IP"). Patent infringement issues were found necessary to resolve a state law breach of contract claim in *U.S. Valves, Inc. v. Dray*, 212 F.3d 1368, 1372 (Fed. Cir. 2000). *See also Hunter Douglas*, 153 F.3d at 1325 (finding federal patent invalidity issue necessary to resolve state law injurious falsehood claim). At a minimum, this claim would fall within this Court's supplemental jurisdiction arising from TCT's other claims. *See infra* § V.

(a) cases in which the contract at issue involved a patent, but no patent law issue was essential to the claims; and (b) cases in which a putative inventor claimed another party stole a trade secret and patented it. *Id.* at 9-18.

**a. Contract Cases Tangentially Involving a Patent**

In *Luckett v. Delpark*, 270 U.S. 496, 502 (1926), the Supreme Court held that federal patent jurisdiction did not extend to "a suit by a patentee for royalties under a license or assignment granted by him, or for any remedy in respect of a contract permitting use of the patent." Consistent with *Luckett*, numerous cases have rejected federal jurisdiction over contract disputes even though the subject matter of the contract was a patent.[8]

[8] *See, e.g., Beghin-Say Int'l Inc. v. Rasmussen*, 733 F.2d 1568, 1571 (Fed. Cir. 1984) ("The sole question raised by the present complaint is whether the involved contracts should be interpreted as having conveyed title to two then non-existent U.S. patent applications"); *Combs v. Plough, Inc.*, 681 F.2d 469, 470-71 (6th Cir. 1982) (finding action did not arise under patent laws because gravamen of claim was that plaintiff "had been fraudulently induced to sign agreements which assigned patents to the defendants"); *Ausherman v. Stump*, 643 F.2d 715, 718 (10th Cir. 1981) (holding claim did not arise under patent laws where primary relief sought was "reformation or rescission of a contract involving a patent right"); *Arvin Indus., Inc. v. Berns Air King Corp.*, 510 F.2d 1070, 1072-73 (7th Cir. 1975) (rejecting infringement claim based on failure to pay royalties because plaintiff "could only enforce its rights under the still existing license agreement"); *Kysor Indus. Corp v. Pet, Inc.*, 459 F.2d 1010, 1012 (6th Cir. 1972) ("Actions to enforce patent license agreements are not within exclusive federal jurisdiction …."). 

In *Granger v. Croscill Home, LLC,*[9] a Magistrate Judge cited *Luckett* and similar cases in rejecting federal jurisdiction over a contract dispute merely because the "contract at issue involves the sale of a particular product on which a patent application was pending at the time the contract was entered."

In this case, federal patent issues are not merely "'ancillary'" to a contractual dispute in which the contract involves a patent. *Granger*, 2011 WL 250433, at *2.[10] To the contrary, TCT's allegations depend on claims of inventorship in U.S. Patents and Patent Applications, which can only be interpreted by a federal court or by the PTO. *See, e.g., Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 390-91 (1996). Because patent inventorship exclusively is an issue of federal law, TCT's claims give rise to federal jurisdiction.

**b. Cases In Which Stolen Trade Secrets are Patented**

In *Becher v. Contoure Labs.*, 279 U.S. 388, 391 (1929), Justice Holmes ruled that a claim for theft of a trade secret or confidential idea did not fall within federal patent jurisdiction merely because the defendant had patented the stolen idea: "[Plaintiff's] right was independent of and prior to any arising out of the

---

[9] No. 10-00597-CG-N, 2011 WL 250433, at *2 (S.D. Ala. Jan. 7, 2011), *adopted by* 2011 WL 245575 (S.D. Ala. Jan. 25, 2011).

[10] Although TCT sometimes references "ownership" in addition to "inventorship," it raises no ownership dispute separate from its inventorship claim. *See MCV*, 870 F.2d at 1571 (noting ownership dispute depended solely on inventorship claim).

patent law, and it seems a strange suggestion that the assertion of that right can be removed from the cognizance of the tribunals established to protect it by its opponent going into the patent office for a later title."

Consistent with *Becher*, numerous cases have rejected federal jurisdiction over claims that a party patented a stolen idea.[11] In *Mannsfeld v. Phenolchemie, Inc.*, 466 F. Supp. 2d 1266, 1270 (S.D. Ala. 2006), the district court reviewed these cases and explained why such allegations do not give rise to federal jurisdiction:

---

[11] *See, e.g., Uroplasty, Inc. v. Advanced Uroscience, Inc.*, 239 F.3d 1277, 1278-79 (Fed. Cir. 2001) (suit against former executive for secretly obtaining patent on employer's trade secrets and confidential information); *AT&T Co. v. Integrated Network Corp.*, 972 F.2d 1321, 1322-23 (Fed. Cir. 1992) (suit against former employees for improperly assigning to new employer patented invention allegedly conceived of during prior employment); *Montecatini Edison, S.P.A. v. Ziegler*, 486 F.2d 1279, 1281 (D.C. Cir. 1973) (counterclaim for misappropriation of inventions on which plaintiff had secured multiple patents); *Eckert v. Braun*, 155 F.2d 517, 518 (7th Cir. 1946) (suit claiming defendant used fraudulently obtained materials to obtain two patents); *Kleinerman v. Snitzer*, 754 F. Supp. 1, 1-2 (D. Mass. 1990) (suit claiming defendant misappropriated secret idea and patented it); *Miller v. Rudolph Wurlitzer Co.*, 48 F. Supp. 772, 773 (W.D.N.Y. 1942) (suit claiming defendant used copies of patent applications shared in confidence to acquire its own patent); *Edwards v. Gramling Eng'g Corp.*, 588 A.2d 793, 795-96 (Md. 1991) (counterclaim alleging corporate officer secretly obtained a patent on employer's confidential technology); *Plastic & Metal Fabricators, Inc. v. Roy*, 303 A.2d 725, 727-28 (Conn. 1972) (suit against technical consultant for misappropriating trade secret and filing a patent application covering invention); *Stark v. Advanced Magnetics, Inc.*, 736 N.E.2d 434, 440-41 (Mass. App. Ct. 2000) (suit claiming defendants stole secret ideas and patented them); *Ogontz Controls Co. v. Pirkle*, 499 A.2d 593, 594 (Pa. Super. Ct. 1985) (suit claiming former employee misappropriated employer's trade secrets and obtained patent on secrets).

> Although obtaining a patent which allegedly includes plaintiff's trade secret or idea is the method by which defendants allegedly violated plaintiff's rights, plaintiff asserts no rights pursuant to the patent or under patent law. Plaintiff only asserts rights with regard to the trade secret or idea itself.

In sharp contrast to all of these cases, TCT does not allege Defendants patented any of Dr. Lattouf's trade secrets and makes no claim for misappropriation of trade secrets. To the contrary, TCT alleges that ***Dr. Lattouf*** properly has claimed inventorship rights of subject matter fully disclosed in U.S. Patent Applications and issued patents,[12] which inventorship rights allegedly have been violated by Defendants' inventorship claims. These claims depend entirely on federal patent inventorship law.

### B. Defendants Actually Dispute TCT's Inventorship Claims

As with *Gunn*, the federal patent issue is "actually disputed" in this case. 133 S. Ct. at 1065. "[I]ndeed, on the merits, it is the central point of dispute." *Id.*;

[12] *See, e.g.*, U.S. Patent Application Pub. No. US 2003/0120264 A1, at 8 (published June 26, 2003) (copy attached as **Exhibit D**), and U.S. Patent Application Pub. No. 2003/0130571 A1, at 6 (published July 10, 2003) (copy attached as **Exhibit E**), in which Dr. Lattouf claimed a "minimally invasive method of treating a patient heart having mitral valve regurgitation from a left ventricle." These applications were published and disclosed ***before*** TCT registered as a limited liability company in Georgia on September 4, 2003. *See* Compl. ¶ 48. Dr. Lattouf has continued to invoke his earliest applications from 2001 and 2002 in support of his current U.S. Patent Applications. *See, e.g.*, Response by Dr. Lattouf Regarding U.S. Patent Application 13/871,505, at 4 (filed Oct. 8, 2013) (copy attached as **Exhibit F**) (invoking "great-great-grandparent application").

*see also supra* § II (describing TCT's allegations of false claims of inventorship). TCT does not contest that the inventorship question is "actually disputed." *See* TCT's Br. at 18 ; *see also* Answer of Drs. Yoganathan & Jimenez [Dkt. 6] (denying allegations that these Defendants made false claims of inventorship).

**C. TCT's Inventorship Claims Raise Substantial Patent Questions**

Although *Gunn* found patent issues "necessary" and "actually disputed" in a legal malpractice case based on an underlying patent infringement action, the "hypothetical" nature of the "backward-looking" inquiry into the prior case did not present a "substantial" federal question. 133 S. Ct. at 1066-67. Not only would the outcome of the "case within a case" analysis have no impact on the "real-world result of the prior federal patent litigation" (a finding of patent invalidity), it also would be unlikely to have any impact on any other patents. *See id.* at 1067-68.

Where *Gunn* concerned a patent that had already been litigated (and the earlier ruling would not be affected by the resolution of *Gunn*), TCT's allegations could have ongoing implications for the issued U.S. Patents and pending Patent Applications involved in this dispute. *See supra* nn.2 & 12. The Federal Circuit repeatedly has ruled that such "inventorship issues" are "substantial enough to satisfy the jurisdictional test." *Hunter Douglas*, 153 F.3d at 1329-30; *see also HIF*, 600 F.3d at 1352-53 (inventorship is a "substantial question of federal patent law").

The inventorship issues here are substantial, as confirmed by the frequency of their mention in TCT's Complaint. TCT makes only conclusory assertions to the contrary.[13] This Court should follow *HIF* and *Hunter Douglas* in holding TCT's inventorship-based claims present "substantial" federal questions.

### D. The Exercise of Federal Jurisdiction Over TCT's Claims Accords with Congress's Federal-State Balance

Having concluded a "hypothetical" inquiry into patent infringement in a legal malpractice case did not present a "substantial" question of patent law, the *Gunn* court had little trouble concluding Congress did not intend for malpractice claims arising from patent cases to be heard in federal court. 133 S. Ct. at 1068.

[13] TCT asserts that "while this lawsuit may necessarily raise disputed questions of patent law, this case is by its nature unlikely to have the sort of significance for the federal system necessary to establish jurisdiction." TCT's Br., at 18. Other than parroting *Gunn*, however, TCT only cites *Mannsfeld* and similar authorities involving the patenting of stolen ideas. *See id.* at 15-18.

Earlier in its brief, TCT cites *MDS (Canada) Inc. v. Rad Source Techs., Inc.*, 720 F.3d 833, 843 (11th Cir. 2013). The *MDS* case (filed before the 2011 amendments to the patent statutes) addressed only whether the Eleventh Circuit or the Federal Circuit would have appellate jurisdiction; because *MDS* had been removed on diversity grounds, there was no risk it would be resolved in state court. *Id.* at 841. The *MDS* court found that it had appellate jurisdiction because the "fact-bound and situation-specific" infringement issue before it would not be "dispositive of any future actions by the [PTO] to grant or deny a patent." *Id.* at 842-43. In this case, Dr. Lattouf appears to claim he invented the entire field of transapical access heart surgery. *See, e.g.*, Compl. ¶¶ 113-19, 121-24 & Ex. G-6, at 3.

In contrast to the hypothetical patent issues in *Gunn*, TCT's claims here raise inventorship issues potentially impacting existing U.S. Patents and future patent applications in the field of transapical access heart surgery. Congress intended such patent issues to be litigated in federal court, as confirmed by the amendments to the patent jurisdictional statutes as part of the American Invents Act ("AIA").

Even before passage of the AIA in 2011, the Federal Circuit repeatedly had held that "'the field of federal patent law preempts any state law that purports to define rights based on inventorship.'" *HIF*, 600 F.3d at 1353 (quoting *Univ. of Colo.*, 196 F.3d at 1372). As explained in the *University of Colorado* decision:

> An independent inventorship standard under state law would likely have different requirements and give rise to different remedies than federal patent law. A different state inventorship standard might grant property rights to an individual who would not qualify as an inventor under federal patent law, or might grant greater relief to inventors than is afforded by federal patent law. Either situation might frustrate the dual federal objectives of rewarding inventors and supplying uniform national patent law standards.

196 F.3d at 1372; *see also id.* ("The federal Patent Act leaves no room for states to supplement the national standards for inventorship.").

Consistent with the substantive exclusivity of federal inventorship law, Congress in 2011 amended § 1338(a) to provide that "***[n]o State court shall have jurisdiction*** over any claim for relief arising under any Act of Congress relating to

patents …." 28 U.S.C. § 1338(a) (emphasis added); *see also infra* § VI (discussing enactment of 28 U.S.C. § 1454 as part of the AIA). Thus, every indication is that this federal court's adjudication of TCT's patent inventorship-based claims would be fully consistent with Congress's intended "balance of federal and state judicial responsibilities." *Gunn*, 133 S. Ct. at 1068. Indeed, remand would deny Emory's Congressionally-mandated right to have these issues heard in a federal forum.

## IV. TCT CANNOT SEEK REMAND BASED ON THE GEORGIA TECH INDIVIDUAL DEFENDANTS' SOVEREIGN IMMUNITY

Despite disputing that the State is a proper party, TCT claims the assertion of sovereign immunity by the individual Georgia Tech Defendants "requires remand as a matter of law." TCT's Br., at 6-8 & n.1.

As an initial matter, the individual Georgia Tech Defendants have not moved to remand and TCT lacks standing to invoke other parties' sovereign immunity. "We have long recognized that a State's sovereign immunity is a ***personal privilege*** which it may waive at pleasure."[14] Thus, courts have rejected

[14] *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999) (internal quotation marks omitted) (emphasis added); *see also Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 389 (1998) (noting that "the Eleventh Amendment grants ***the State*** a legal power to assert a sovereign immunity defense should it choose to do so") (emphasis added).

non-immune parties' invocation of other parties' sovereign immunity on standing grounds. *See, e.g., Tritchler v. Cnty. of Lake*, 358 F.3d 1150, 1153 (9th Cir. 2004).

In any event, TCT cites no authority holding that the assertion of immunity by certain defendants mandates the remand of the entire case, as opposed to only the claims against the immune defendants. As the Supreme Court explained in *Schacht*, even when a State entity asserts that the Eleventh Amendment precludes a federal court from hearing an immunity-barred claim, this assertion does not "destroy removal jurisdiction over the remaining claims in the case." 524 U.S. at 392-93. Thus, even if TCT had standing to invoke this immunity, the proper remedy is to partially remand only the claims against the immune defendants.[15]

Moreover, "the Eleventh Amendment does not automatically deprive a court of original jurisdiction." *McClendon v. Georgia Dep't of Cmty. Health*, 261 F.3d 1252, 1257 (11th Cir. 2001). Thus, even when an immune defendant removed a case to federal court and thereby waived immunity from suit in a federal forum,[16] it

[15] *See McCall v. Dep't of Human Res.*, 176 F. Supp. 2d 1355, 1370 (M.D. Ga. 2001) (citing *Schacht* and explaining that "the Supreme Court has authorized district courts to partially remand cases when faced with an assertion of Eleventh Amendment immunity after removal"); *see also Diamond v. Cnty. of Sacramento*, No. Civ. 05-1606-DFL-DAD, 2006 WL 236902, at *2 (E.D. Cal. Jan. 31, 2006) (similarly granting partial remand).

[16] Under 28 U.S.C. § 1454(b)(1), the individual Georgia Tech Defendants were not required to (and did not) consent to Emory's removal.

retained its full ***substantive*** immunity from liability. *Stroud v. McIntosh*, 722 F.3d 1294, 1301-03 (11th Cir. 2013). This Court can effectuate the individual Georgia Tech Defendants' immunity from liability to the same extent as a Georgia court.

## V. THE COURT SHOULD EXERCISE SUPPLEMENTAL JURISDICTION OVER ANY NON-PATENT CLAIMS

Emory removed this case pursuant to the AIA's new removal statute, 28 U.S.C. § 1454, which allows removal of an action when "any party asserts a claim for relief arising under" federal patent law. 28 U.S.C. § 1454(a)-(b). Section 1454 confirms that, when a case is removed based on a patent claim, the district court should remand non-patent claims only if those claims are not within "supplemental jurisdiction." 28 U.S.C. § 1454(d)(1).[17] The district court retains discretion to remand "under the circumstances specified in section 1367(c)." *Id.* § 1454(d)(2).

### A. The Court Has Supplemental Jurisdiction Under § 1367(a)

Under § 1367(a), district courts have supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of

[17] Even before the AIA, the Federal Circuit had ruled that, when one claim in a case arose under federal patent law, supplemental jurisdiction was proper over the non-patent claims. *See, e.g., Hunter Douglas*, 153 F.3d at 1331 ("With one claim properly in federal court, the others follow under section 1367."); *HIF*, 600 F.3d at 1357 (directing consideration of supplemental jurisdiction over non-patent claims).

the United States Constitution." 28 U.S.C. § 1367(a). Given that TCT incorporated the same factual allegations into each of its claims, it cannot (and does not appear to) dispute that all of its claims arise out of the same case or controversy, making supplemental jurisdiction proper under § 1367(a).

**B. Remand is Unwarranted Under the § 1367(c) Factors**

In conclusory fashion, TCT asserts that three of the § 1367(c) factors favor remand. *See* TCT's Br., at 19-22. None of these contentions withstands scrutiny.

First, none of TCT's claims presents a "novel or complex issue of State law." 28 U.S.C. § 1367(c)(1). Other than the multiple references to patent inventorship issues (which must be heard in federal court), TCT's Complaint asserts garden-variety contract and tort claims that are vague and confusing, but not of any particular legal complexity or special significance to the policies of the State of Georgia. *See* Compl. ¶¶ 176-244. As the Eleventh Circuit explained in *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 743-44 (11th Cir. 2006), such claims generally do not raise "novel or complex issues of state law."

Second, state law claims will not "substantially predominate" over claims arising under federal patent inventorship law. 28 U.S.C. § 1367(c)(2). As noted above, in addition to alleging four claims entirely dependent upon false statements of patent inventorship, TCT explicitly makes false inventorship allegations in four

other claims. Even if there might be some basis for finding some claims do not "arise under" the patent laws, false patent inventorship allegations constitute "the real body of [the] case," as opposed to an "appendage." *Parker*, 468 F.3d at 744.

Third, there are no "compelling reasons for declining jurisdiction" sufficient to show "exceptional circumstances."[18] Considering all of TCT's claims together furthers judicial economy because all the claims arise out of the same alleged facts and involve the same parties.[19] Nor is there any concern with convenience or fairness, given this Court's close proximity to Fulton County State Court.

Accordingly, even if the Court finds that some of TCT's claims do not arise under federal patent law, it can and should exercise supplemental jurisdiction over those claims under 28 U.S.C. § 1367.

## VI. EMORY'S POTENTIAL PATENT LAW COUNTERCLAIM

In addition to enacting § 1454, the AIA amended other patent jurisdictional statutes. As noted above, § 1338(a) was amended to provide that "[n]o State court shall have jurisdiction over any claim for relief arising under any Act of Congress

---

[18] 28 U.S.C. § 1367(c)(4); *see Parker*, 468 F.3d at 745 (explaining § 1367(c)(4) considers "judicial economy, convenience, fairness to the parties, and whether all claims would be expected to be tried together").

[19] Even if TCT's claims against the immune Defendants were remanded (*see supra* § IV), the only proceedings that can be expected to occur in state court relative to those parties would be briefing on immunity-based motions to dismiss.

relating to patents …." The statute governing the Federal Circuit's jurisdiction was amended to provide jurisdiction over any appeal "in any civil action arising under, or in any civil action in which a party has asserted a compulsory counterclaim under, any Act of Congress relating to patents …." 28 U.S.C. § 1295(a).[20]

Under these amendments, patent law counterclaims cannot be heard by state courts, but must be resolved by the federal courts.[21] If Emory must answer TCT's claims,[22] it anticipates filing a counterclaim seeking declaratory relief relative to the patent inventorship issues raised by TCT's claims. Because this counterclaim indisputably would arise under federal patent law, TCT's claims would be subject to supplemental jurisdiction under § 1367. *See* 28 U.S.C. § 1454(d)(1).

---

[20] These revisions were intended to abrogate *Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826 (2002), which held that a patent law counterclaim did not trigger the appellate jurisdiction of the Federal Circuit. *See, e.g.*, Joe Matal, *A Guide to the Legislative History of the America Invents Act: Part II of II*, 21 Fed. Cir. B.J. 539, 539-41 (2012).

[21] *See also* 28 U.S.C. § 1454(c) (clarifying federal court has removal jurisdiction over claims where state court lacks jurisdiction).

[22] If this case is remanded, Emory would be required to answer notwithstanding its Rule 12(e) motion. *Compare* O.C.G.A. § 9-11-12(e) *with* Fed. R. Civ. P. 12(a)(4). Thus, this case may be "re-removed" following any remand.

## VII. CONCLUSION

This Court has exclusive jurisdiction over claims by TCT necessitating a determination of federal patent inventorship. This Court also has supplemental jurisdiction over any non-patent claims, and none of the grounds for discretionary remand of such claims is satisfied here. Finally, TCT lacks standing to invoke other parties' Eleventh Amendment immunity, which would at most require only a partial remand of the claims against the immune Defendants. For all of the foregoing reasons, TCT's Motion to Remand should be denied.

Respectfully submitted, November 14, 2013.

s/ C. Allen Garrett Jr.
Joel D. Bush II (Ga. Bar No. 098775)
C. Allen Garrett Jr. (Ga. Bar No. 286335)
Robert E. Buckley (Ga. Bar No. 140280)
jbush@kilpatricktownsend.com
agarrett@kilpatricktownsend.com
robuckley@kilpatricktownsend.com

KILPATRICK TOWNSEND
& STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4528
Telephone: (404) 815-6500
Facsimile: (404) 815-6555

*Counsel for Defendant Emory University*

## CERTIFICATE OF FONT AND POINT SELECTION

I hereby certify that the foregoing was prepared in Times New Roman font, 14 point type, in compliance with Local Rule 5.1(C).

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notifications of such filing to the following attorneys of record:

J. Robert Howard
2393 Montview Drive, N.W.
Atlanta, Georgia 30305

William Q. Bird
Kristen L. Beightol
BIRD LAW GROUP, P.C.
2170 Defoor Hills Road
Atlanta, Georgia 30318

John W. Crongeyer, M.D.
CRONGEYER LAW FIRM, P.C.
2170 Defoor Hills Road
Atlanta, Georgia 30318

Jill Warner
McRAE BROOKS WARNER LLC
1175 Peachtree Street, N.E.
100 Colony Square, Suite 2100
Atlanta, Georgia 30361

Holmes J. Hawkins, III
KING & SPALDING LLP
1180 Peachtree Street, NE
Atlanta, Georgia 30309

Julie Adams Jacobs
Assistant Attorney General
Department of Law, State of Georgia
40 Capitol Square, S.W.
Atlanta, Georgia 30334-1300

Dated: November 14, 2013.

s/ C. Allen Garrett Jr.
C. Allen Garrett Jr. (Ga. Bar No. 286335)
agarrett@kilpatricktownsend.com